| | |
|---|---|
| IN RE: WILLOW BEND VENTURES, LLC, *Debtor* | CIVIL ACTION |
| | NO. 18-6910 |
| RIVER PARISHES DIRT & GRAVEL, LLC, *Plaintiff* | SECTION M (4) |
| VERSUS | |
| WILLOW BEND VENTURES, LLC, HENSLEY R. LEE CONTRACTING, INC., HENSLEY R. LEE, AND WAYNE FLETCHER, *Defendants* | |

## <u>ORDER & REASONS</u>

Before the Court is a motion to dismiss counterclaims filed by River Parishes Dirt & Gravel, LLC ("River Parishes") and Kensington Capital Advisors LLC ("Kensington Capital") (collectively, "Counterclaim Defendants").[1]  Defendant and plaintiff-in-counterclaim Willow Bend Ventures, LLC ("Willow Bend") responds in opposition,[2] and Counterclaim Defendants reply in further support of their motion.[3]  Having considered the parties memoranda, Willow Bend's complaint in counterclaim,[4] and the applicable law, the Court issues this Order & Reasons.

## I.     BACKGROUND

This matter concerns an uncompleted business deal.[5]  On May 9, 2017, Willow Bend filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States

---

[1] R. Doc. 25.
[2] R. Docs. 26 & 29.
[3] R. Doc. 33.
[4] R. Doc. 3.
[5] R. Doc. 1-2 at 1.

Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Court").[6]  Two weeks later, on May 22, 2017, Willow Bend, through its principals Hensley R. Lee ("Lee") and Hensley R. Lee Contracting, Inc. ("HRL") executed a contract to sell the membership interest in Willow Bend to River Parishes (the "May 22, 2017 Agreement").[7]  River Parishes alleges that Willow Bend, Lee, and HRL concealed the pendency of the Chapter 11 proceeding, Willow Bend's substantial sales tax liabilities, and a lien on Willow Bend's membership interests held by BankPlus.[8]

After signing the contract, River Parishes began its due-diligence examination of Willow Bend.[9]  Steve Lawler ("Lawler"), BankPlus's former president, was involved in the due-diligence production on Willow Bend's behalf.[10]  On June 26, 2017, River Parishes learned about Willow Bend's bankruptcy proceeding.[11]  River Parishes raised the issue with Lawler, who admitted that Willow Bend had filed for Chapter 11 protection and that the Bankruptcy Court had not authorized Willow Bend to proceed under the May 22, 2017 Agreement.[12]

On June 29, 2017, Lawler introduced River Parishes to Philip K. Wallace ("Wallace"), Willow Bend's bankruptcy attorney.[13]  Wallace confirmed to River Parishes that the Bankruptcy Court had not authorized Willow Bend to proceed with the May 22, 2017 Agreement, and disclosed Willow Bend's state and local sales tax liabilities, as well as the liens in favor of BankPlus.[14]

---

[6] *Id.*
[7] *Id.* at 1-2.
[8] *Id.* at 3.
[9] *Id.* at 4.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at 5.
[14] *Id.*

River Parishes alleges that HRL and Lee made two payments to River Parishes as reimbursements "for the continuing expenses associated with the breaches of the [May 22, 2017] Agreement" and the delay in closing the transaction (the "extension payments").[15] River Parishes further alleges that, in conjunction with those extension payments, it sent to Lawler and Wallace an agreement containing representations made by HRL and Lee that the payments did not violate any provision of the Chapter 11 protection.[16]

On November 26, 2017, prior to the extension payments, Lawler emailed River Parishes, stating: "I don't think [Lee] can cut a check from [Willow Bend], need to clear with [Wallace.]"[17] River Parishes alleges that, despite this email, River Parishes was wired $15,000 from Willow Bend's bank account, without the Bankruptcy Court's authorization, which constituted fraud and a breach of the agreement pertaining to the extension payments.[18] On April 11, 2018, Willow Bend filed a motion in the Bankruptcy Court to reject and avoid the sale, at which time, River Parishes alleges, it became aware of Willow Bend's fraud and intentional misrepresentations, including the representation that Wallace had no knowledge of the extension payments or the agreement pertaining thereto.[19]

On May 21, 2018, River Parishes filed in the bankruptcy case its "Adversary Complaint" against Willow Bend, HRL, Lee, Wayne Fletcher ("Fletcher") (collectively, "Defendants"), alleging claims of fraud and intentional misrepresentation, negligent misrepresentation, civil conspiracy, breach of contract, detrimental reliance, and bad faith breach of contract all related to the unconsummated May 22, 2017 Agreement.[20] On July 23, 2018, Defendants filed in this

---

[15] *Id.*
[16] *Id.* at 5-6.
[17] *Id.* at 6.
[18] *Id.*
[19] *Id.* at 6-7.
[20] *Id.* at 7-18.

Court a motion to withdraw the reference to the Bankruptcy Court of River Parishes' adversary complaint.[21] River Parishes agreed that withdrawal of the reference was appropriate,[22] and as a result, the Court granted Defendants' motion, allowing the adversary proceeding to continue as a civil action in this Court.[23]

Willow Bend filed an answer and counterclaim against River Parishes; Kensington Capital, manager of River Parishes; John Wagner ("Wagner"), a representative of River Parishes; and John B. Ohle ("Ohle"), a representative of Kensington Capital.[24] Willow Bend alleges that on October 13, 2017, it presented to the Bankruptcy Court a motion to approve an agreement to sell its assets to River Parishes free and clear of liens under 11 U.S.C. § 363(f), and that the agreement was drafted by River Parishes.[25] The Bankruptcy Court granted the motion on January 4, 2018.[26] Thereafter, the Bankruptcy Court issued an order assigning a value of $700,000 to Willow Bend's equipment, and $6,500,000 to its land.[27]

Willow Bend alleges that the asset sales contract approved by the Bankruptcy Court required River Parishes to deposit $25,000 into the escrow account of the law firm Newman, Mathis, Brady & Spedale[28] within four business days of the Bankruptcy Court's approval of the deal, and an additional $125,000 within five calendar days from the expiration of the inspection period.[29] Willow Bend alleges that the first $25,000 was not paid until May 5, 2018, and only after Willow Bend made a demand for it.[30] Willow Bend alleges that River Parishes was in

---

[21] R. Doc. 1.
[22] R. Doc. 21.
[23] R. Doc. 34.
[24] R. Doc. 3. Lee, HRL, and Fletcher filed a separate answer and counterclaim. R. Doc. 13.
[25] R. Doc. 3 at 23.
[26] *Id.*
[27] *Id.*
[28] In April 2017, River Parishes had engaged Newman, Mathis, Brady & Spedale to assist in its acquisition of Willow Bend's membership interests leading up to the May 22, 2017 Agreement. R. Doc. 1-2 at 3.
[29] *Id.* at 24-25.
[30] *Id.* at 25.

default of the approved asset sale agreement and refused to move forward with the timely completion of the sale, which caused Willow Bend to incur additional expenses and attorney's fees before the sale was finalized.[31]

Willow Bend further alleges that on March 14, 2018, Wagner sent a letter to Lee and Wallace "demanding an improper payment of $400,000 on behalf of River Parishes" for Willow Bend, HRL, and Lee's breach of the never-consummated May 22, 2017 Agreement.[32] On June 12, 2018, River Parishes' counsel wrote to counsel for Willow Bend, Lee, HRL, and Fletcher offering to settle the claims raised in the adversary proceeding for $600,000,[33] which Willow Bend characterizes as a "fictitious settlement … presenting false allegations in connection with the May 22, 2017 Agreement which was invalid and never approved by [the Bankruptcy] Court."[34] Willow Bend asserts counterclaims for fraud, breach of contract, civil conspiracy, and unjust enrichment.[35]

## II. PENDING MOTION

River Parishes and Kensington Capital (together, Counterclaim Defendants) filed the instant motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that Willow Bend does not raise any claims upon which relief can be granted.[36] First, Counterclaim Defendants argue that Willow Bend failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.[37] Next, they argue that Willow Bend did not state a claim for breach of contract because Willow Bend "fails to specify the

---

[31] *Id.* The sale of Willow Bend's assets to River Parishes' assignee, Edgard Construction Material Holdings, LLC, was finalized on July 31, 2018. R. Doc. 26 at 6.
[32] R. Doc. 3 at 26; R. Doc. 3-2.
[33] R. Doc. 3-3.
[34] R. Doc. 3 at 27.
[35] *Id.* at 27-30
[36] R. Doc. 25. Movants represent that Wagner and Ohle are not parties to the motion because they had not yet been served when it was filed. R. Doc. 25 at 1. They still have not been served.
[37] R. Doc. 25-1 at 3-4.

contract River Parishes allegedly breached, how said breach of contract occurred, who the parties to the contract were, what the length of the stated delay was or when it allegedly occurred, or if any parties other than River Parishes were involved."[38] Counterclaim Defendants also argue that Willow Bend has not stated a claim for civil conspiracy because conspiracy is not a stand-alone claim under Louisiana law, and Willow Bend has not alleged an underlying tort.[39] Finally, Counterclaim Defendants argue that Willow Bend cannot maintain a claim for unjust enrichment because it has asserted other remedies at law and cannot explain why its claim, as pleaded, would lie against them.[40]

Willow Bend responds that it has indeed stated claims for fraud, breach of contract, civil conspiracy, and unjust enrichment against Counterclaim Defendants.[41] Willow Bend argues that it has stated a claim for fraud against River Parishes for its alleged false representations made in connection with the May 22, 2017 Agreement pointing to River Parishes' March and June 2018 requests for $400,000 and $600,000, respectively, to settle the claims raised in River Parishes' adversary complaint.[42] Further, Willow Bend argues that Counterclaim Defendants committed fraud by "secretly, directly and without knowledge of Counsel" demanding payment of $15,000, and then another $66,000 from Lee and HRL.[43] Willow Bend argues that it stated a breach-of-contract claim against River Parishes by alleging that River Parishes failed to timely make the deposits required by the sale agreement that was approved by the Bankruptcy Court.[44] Willow Bend also argues that it stated a civil conspiracy claim against River Parishes because River

---

[38] *Id.* at 4.
[39] *Id.* at 5-7.
[40] *Id.* at 7-9.
[41] R. Doc. 26.
[42] *Id.* at 8-9.
[43] R. Doc. 29 at 5-6.
[44] R. Doc. 26 at 9-11.

Parishes, through several attorneys, law firms, and representatives, "engaged in a highly orchestrated scheme to extract unearned payments for thousands of [d]ollars from Willow Bend in connection with the May 22, 2017 Agreement which was never approved by [the Bankruptcy] Court"[45] and worked to obtain a lower price for Willow Bend's assets.[46]  Finally, Willow Bend argues that River Parishes was unjustly enriched by receiving $66,000 from HRL for a contract extension that was not approved by the Bankruptcy Court, and that Willow Bend attempted to collect the $400,000 and $600,000 proposed settlement payments.[47]

## III.    ANALYSIS

### A.    Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

---

[45] *Id*. at 11.
[46] R. Doc. 29 at 9.
[47] R. Doc. 26 at 12.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Id.* However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B.    Fraud**

Under Louisiana law, "fraud" is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other" and can also result from silence or inaction. La. Civ. Code art. 1953. The elements of a fraud cause of action are: (1) "a misrepresentation of material fact"; (2) "made with the intent to deceive"; and (3) "a reasonable and justifiable reliance by the plaintiff and resulting injury." *Riedel v. Fenasci*, 2018 WL 6839564, at *9 (La. App. Dec. 28, 2018). A plaintiff must prove fraud by a preponderance of the evidence, and "[c]ircumstantial evidence, including highly suspicious facts and circumstances, may be considered in determining whether

fraud has been committed." *Lomont v. Bennett*, 172 So. 3d 620, 629 (La. 2015*) (citations omitted).

Rule 9(b) of the Federal Rules of Civil Procedure requires that the circumstances constituting fraud be pleaded with particularity. "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)). "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009) (citation and internal quotation marks omitted).

Willow Bend's counterclaim does not satisfy the heightened pleading requirements of Rule 9(b). There are no allegations articulating any of the elements of the cause of action, nor are there any allegations identifying a speaker or content of an allegedly fraudulent statement. Willow Bend has made no effort to provide any of these specifics with respect to the settlement proposals to which it refers; it merely attaches them and recites that they speak for themselves. If so, they do not speak about the elements of any alleged fraud with the particularity required by Rule 9(b). Therefore, Willow Bend's claim for fraud must be dismissed.

### C.     Breach of Contract

To succeed on a breach-of-contract claim in Louisiana, a plaintiff must show "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So. 3d 1099, 108-09 (La. App. 2011).

Willow Bend alleges that River Parishes was obligated to make certain payments under the sales agreement approved by the Bankruptcy Court, that it failed to do so timely, and that Willow Bend was damaged by the delay.[48]  Therefore, Willow Bend has stated a breach-of-contract claim against River Parishes.  However, Willow Bend has not alleged that it had any contract with Kensington Capital.  Thus, Willow Bend has not stated a breach-of-contract claim against Kensington Capital.

### D.    Civil Conspiracy

"Conspiracy by itself is not an actionable claim under Louisiana law," and must be based on an underlying tort.  *Crutcher-Tufts Res., Inc. v. Tufts*, 38 So. 3d 987, 991 (La. App. 2010) (citing *Ross v. Conoco, Inc.*, 828 So. 2d 546 (La. 2002)).  Instead, civil conspiracy imposes solidary liability on the co-conspirators by providing that a person "who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."  La. Civ. Code art. 2324.  Thus, the actionable element of the civil conspiracy claim is the "'tort which the conspirators agree to perpetrate and which they actually commit in whole or in part.'"  *Crutcher-Tufts,* 38 So. 3d at 991 (quoting *Ross,* 828 So. 2d at 552).  To recover under a civil conspiracy theory of solidary liability, "a plaintiff must prove that an agreement existed to commit an illegal or tortious act; the act was actually committed and resulted in plaintiff's injury; and there was an agreement as to the intended outcome or result." *Id.* (citing *Butz v. Lynch,* 710 So. 2d 1171 (La. App. 1998)).

Willow Bend bases its civil conspiracy claim on the underlying tort of fraud.  This Court has determined that Willow Bend has not stated a cause of action for fraud.  Therefore, Willow

---

[48] R. Doc. 3 at 21-28.

Bend cannot sustain a claim for civil conspiracy based on fraud, and Willow Bend's conspiracy claim must be dismissed.

### E.        Unjust Enrichment

Louisiana Civil Code article 2298 provides the basis for an action based on unjust enrichment, or *action de in rem verso*.  Article 2298 states: "A person who has been enriched without cause at the expense of another person is bound to compensate that person."   The Louisiana supreme court has held that the five requirements for establishing a cause of action for unjust enrichment are:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff.

*Baker v. Maclay Props. Co.*, 648 So. 2d 888, 897 (La. 1995) (citations omitted).  Article 2298 expressly states that the remedy of unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule."  A plaintiff is precluded from seeking recovery under a theory of unjust enrichment if it pleads another cause of action, regardless of whether the plaintiff is successful on the other theory of recovery. *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010).  Thus, if the law provides the plaintiff with another remedy, the plaintiff "has failed to state a cause of action in unjust enrichment."  *Id.*

Willow Bend has not stated a valid claim for unjust enrichment.  The unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided, but Willow Bend pleaded other claims.  Moreover, in its counterclaim, Willow Bend alleges that

River Parishes was enriched by receiving $66,000 from HRL.[49] There is no allegation that Willow Bend itself suffered an impoverishment due to this payment. Therefore, Willow Bend's claim for unjust enrichment must be dismissed.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Counterclaim Defendants' motion to dismiss (R. Doc. 25) is DENIED as to Willow Bend's breach-of-contract claim against River Parishes; and otherwise GRANTED.

New Orleans, Louisiana, this 28th day of May, 2019.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[49] R. Doc. 3 at 30.